In re **INTERNATIONAL BUILDING COMPONENTS, INC.,** Debtor-In-Possession.

**INTERNATIONAL BUILDING COMPONENTS, INC.,** Plaintiff,

v.

**PACIFIC DEVELOPMENT CORPORATION, a/k/a Pacific Realty,** Defendant.

**Bankruptcy No. 86–0489.**
**Adv. No. 86–589.**

United States Bankruptcy Court, W.D. Pennsylvania.

May 29, 1987.

Kevin C. Hansen, Ronald D. Morelli, Meyer, Unkovic & Scott, Pittsburgh, Pa., for defendant, Pacific Development Corp.

Maury D. Nusbaum, Rosenberg, Kirshner, P.A., Pittsburgh, Pa., Allan W. Gilbert, Rice, Rice, Gilbert & Marston, Detroit, Mich., and Henry Gusky, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for plaintiff/debtor-in-possession, International Bldg. Components, Inc.

David Abrams, Abrams & Mazer, Monroeville, Pa., for The Committee of Unsecured Creditors.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a motion filed on behalf of Defendant, Pacific Development Corporation (hereinafter "Pacific"), wherein we are requested to *Determine the Nature of this Proceeding and to Abstain From and/or Transfer Case* to the District Court. A hearing was held on this matter on February 11, 1987. Thereafter, the parties submitted briefs on the issue of whether the adversary presently before this Court constitutes a core or related proceeding, and whether this Court has the authority to conduct a jury trial in this case. Based upon the pleadings, briefs and arguments of the parties, we find that this adversary constitutes a related proceeding under Title 28 U.S.C. § 157. While this Court is of the opinion that it is entitled to conduct a jury trial in a related proceeding, to do so in a case where the parties do not consent to our entry of a final determination would cause excessive, and possibly redundant, expenditure of time and funds. Therefore, we will transfer this adversary proceeding to the District Court for determination.

## FACTS

IBC avers that it entered into a contract for goods and services with Pacific; in reliance thereon, IBC expended money and labor to prepare the contracted-for goods. Thereafter, IBC alleges that Pacific summarily cancelled its order, without justification, causing IBC damage, including the cost of the goods purchased, labor expended, and the loss of its expectation interest.

Pacific defends on several levels:

1) Pacific alleges that no contract was ever formed by and between it and IBC, because the exchange of IBC's proposal and Pacific's purchase order do not constitute an offer and acceptance.

2) Pacific claims that certain of the documents necessary to create the contractual relationship were unexecuted, thereby raising a statute of frauds defense.

3) Pacific asserts that if a contract is found to exist, IBC caused an anticipatory breach of same by altering the terms and conditions of the contractual relationship in a manner which Pacific did not accept.

## ANALYSIS

This Court has very recently determined that Bankruptcy Courts have the *authority* to hear jury trials in both "core proceedings" and "related proceedings". *Funding Systems Asset Management Corporation v. Minnesota Mining & Manufacturing Company* (In re Funding Systems Asset Management Corporation), 72 B.R. 595, 597 (W.D.Pa.1987); *See also, In re Kenval Marketing Corporation,* 65 B.R. 548

(Bankr.E.D.Pa.1986); *In re George Woloch Company, Inc.*, 49 B.R. 68 (Bankr.E.D.Pa. 1985).

In *Kenval,* the Court, relying on the Seventh Amendment right to jury trial, found that jury trials in core proceedings are appropriate when the relief sought is legal in nature as opposed to equitable. Debtor's breach of contract claims are actions for money damages; therefore, if we find the proceeding to be core in nature, it would be appropriate, pursuant to the Seventh Amendment of the Constitution, for this Court to conduct a jury trial.

The Court in *George Woloch* noted that Bankruptcy Courts are permitted to enter *final* determinations in core proceedings only. If this proceeding is found to be related, holding a jury trial would result in an advisory and possible duplicative proceeding. Just as the District Court is empowered to conduct a *de novo* review after considering the Bankruptcy Court's Findings of Fact and Conclusions of Law, the District Court, upon timely specific objection, would be required to conduct an additional jury trial, using the Bankruptcy Court jury verdict for advisory purposes only. Should we find this proceeding to be related, it appears appropriate to transfer the case to the District Court in the interest of judicial economy. The only exception to such a transfer would be in a case wherein the opposing parties consented to the Bankruptcy Court's jurisdiction. *See* 28 U.S.C. § 157(c)(2).

Therefore, we must determine whether the proceeding presently before this Court is a core or related proceeding. IBC has alleged that this adversary proceeding qualifies as a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), and (O). Pacific argues however, that the cause of action in this case is specifically that type of case which the Supreme Court determined inappropriate to be heard by an Article I judge. *Northern Pipeline Construction Company v. Marathon Pipeline Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

IBC relies on the following statutory language from § 157(b)(2) in order to direct this Court to find the proceeding to be core in nature:

> (b)(2) Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> (E) orders to turn over property of the estate; and
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

This Court has previously held that a determination in an account receivable action does in fact concern the administration of the estate, in that account receivable actions are essentially actions for the collection on debts and collection of such debts is necessary when a debtor in Chapter 11 is attempting to reorganize. *In re Allegheny, Inc.,* 68 B.R. 183 (Bankr.W.D. Pa.1986).

In the case at bar, we are not presented with the simple collection of an account receivable claim. Rather, we have an action, the defense of which asserts basic flaws in the formation of the contract itself. A determination as to the existence of a contract, like the collection of an account, does impact on the administration of the debtor's estate. However, the matter before this Court is substantially removed from the "core" of the proceedings; it is not simply an estate asset to be transmitted to the creditors pro rata. Rather, it is an action requiring a determination as to whether said asset exists at all.

IBC has further requested that we find this to be a turn over action, thereby rendering this a core proceeding. Section 542(b) of the Bankruptcy Code states as follows:

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset

under section 553 of this title against a claim against the debtor.

This Court has previously stated that "a claim for an overdue account, specific in its terms as to amount due and date payable, constitutes a matured debt. *If the Debtor's claim lacks such certainty, an action for turn over might not be appropriate.*" *In re Allegheny, Inc., supra* at 190 (emphasis added). It is this very issue which separates the case at bar from the case of *Allegheny, Inc.*. In *Allegheny, Inc.*, the Defendant, while it had not yet filed an Answer, stated at the oral argument on this motion, that there was no contention as to the validity of the contractual relationship between the parties; the issue in that case revolved around certain claims for breaches of warranty in the final products. In the case at bar, we are faced with a contention by Defendant that the contract which IBC seeks to enforce did not exist; and in the event that we found it did exist, that IBC was the party causing a breach rather than Pacific. Clearly this is anything but a claim for an overdue account specific in terms as to amount due and date payable, thereby constituting a mature debt; in fact, this pattern is analogous to that described in *Marathon*.

As stated previously, the action presently before the Court will revolve around a determination of contract formation. If a contract were found to exist, this Court would be asked to determine whether IBC was the party in breach; these questions bear a tenuous relationship to the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(O).

We find that this adversary proceeding is related in nature. As the parties have not consented to this Court's exercise of jurisdiction, we would be required to issue Findings of Fact and Conclusions of Law for review by the District Court. Because Pacific has requested a jury trial in this matter, any such action conducted by this Court would be advisory. This Court believes that such an act would be a serious waste of judicial resources; therefore, we will transfer this action to the District Court for determination.

An appropriate Order will be issued.