**BIG RIVERS ELECTRIC
CORPORATION,
Plaintiff,**

v.

**GREEN RIVER COAL CO.,
INC., Defendant.**

**Misc. A. No. 94–M–15–O.**

United States District Court,
W.D. Kentucky,
Owensboro Division.

May 24, 1995.

**752**

Holbrook, Wible, Sullivan & Mountjoy, P.S.C., Ralph W. Wible, Frank Stainback, Michael A. Fiorella, Owensboro, KY, Bradley A. MacLean, N. Sue Van Sant Palmer, Farris, Warfield & Kanady, Nashville, TN, for plaintiff.

Kenneth E. Aaron, Buchanan Ingersoll Professional Corp., Philadelphia, PA, John R. Leathers, Buchanan Ingersoll Professional Corp., Lexington, KY, Scott C. Cox, Asst. U.S. Atty., Louisville, KY, for defendant.

## MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the Court upon motion to withdraw the reference to the bankruptcy court by Big Rivers Electric Corporation ("Big Rivers") [Record No. 1]. Fully briefed,[1] this matter is now ripe for decision.

### PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

On July 8, 1993, Green River Coal Co., Inc. ("Debtor" or "Green River") filed a petition for relief under Chapter 11 of the Bankruptcy Code (Bankruptcy Case No. 93–40568) (hereinafter referred to as the "main case"). Pursuant to 28 U.S.C. § 157(a) and LR 21 of this Court, the main case and all proceedings therein were referred to the United States Bankruptcy Court for the Western District of Kentucky.

In the main case, Debtor filed a Motion (the "Assumption Motion") for Approval of Assumption of Coal Supply Agreement ("Contract # 527") between Debtor and Big Rivers. In the order tendered with the Assumption Motion, Debtor sought a ruling from the bankruptcy court that Contract # 527 was valid, binding, and enforceable against Big Rivers. Big Rivers contended that Contract # 527 was procured by Debtor through unlawful means and was void, voidable or otherwise unenforceable. Big Rivers objected to the Assumption Motion and filed an adversary proceeding in the Bankruptcy Court to determine the validity of Contract # 527 (Adversary Proceeding No. 94–4019). Subsequently, Big Rivers moved this Court to withdraw the reference of the Assumption Motion and Adversary Proceeding No. 94–4019.

Before exploring the merits of the motion to withdraw the reference, one must have an understanding of two cases pending before this Court and their interrelationship with the adversary proceeding: *United States v. Thorpe*, Owensboro Criminal No. 94–cr–14 (the "Criminal Action"), and *Big Rivers Elec. Corp. v. Thorpe*, Owensboro Civil No. 93–cv–110–O–C (the "Civil Action"). In the Criminal Action, the United States alleges, *inter alia*, a scheme to defraud Big Rivers through the payment of bribes and kickbacks relating to Contract # 527. Specifically, the indictment alleges that after presenting a written bid on Contract # 527 in March, 1981, Clyde Brown (a shareholder in Green River) contacted Eddie Brown and requested assistance in obtaining Contract # 527 for Green River. Green River offered to pay Eddie Brown a royalty if Green River was awarded Contract # 527. Eddie Brown then contacted Shirley Pritchett ("Pritchett") and William Thorpe ("Thorpe"), Big Rivers' general manager, and requested their assistance in obtaining Contract # 527 for Green River. In early to mid–1981, Thorpe, Pritchett, and Eddie Brown allegedly agreed that, in return for the influence and support of Thorpe in

---

1. By Order entered February 8, 1995, this Court permitted (1) Texas Commerce Bank National Association, Norwest Bank Denver, N.A., Banque Paribas, and Den norske Bank AS (collectively, the "Bank Group"), secured creditors of Green River Coal Co., Inc., and (2) the Unsecured Creditors' Committee of Green River Coal Co., Inc. to file supplemental memoranda concerning the motion to withdraw the reference.

the award of Contract # 527, Eddie Brown would share his royalty payments with Thorpe and Pritchett.

The indictment goes on to allege that, pursuant to the agreement between Thorpe, Pritchett, and Eddie Brown, Pritchett gave Eddie Brown confidential inside information received from Thorpe. Eddie Brown in turn passed this information on to Green River's owners, Clyde Brown and Buddie Morris. Green River thereafter resubmitted its proposal, making use of the confidential information. After receiving the revised proposal and upon Thorpe's recommendation, Big Rivers awarded Contract # 527 to Green River.

The indictment further alleges that in 1984, shortly before coal shipments under Contract # 527 were about to begin, Eddie Brown entered into a written agreement with Green River. The agreement provided that Eddie Brown was to receive one percent of all monies paid by Big Rivers to Green River under Contract # 527. Eddie Brown subsequently entered into a written agreement with Pritchett whereby Pritchett was to receive 50% of the monies received by Eddie Brown under his royalty agreement with Green River. Pritchett agreed with Thorpe to give Thorpe half of the payments that Pritchett received from Eddie Brown. Later in 1984, Thorpe sold his 25% interest in the royalty agreement to Eddie Brown and Pritchett for $200,000. Following the buyout of Thorpe's interest, Eddie Brown and Pritchett agreed that the former would pay the latter a fixed percentage of the payments received from Green River. In December, 1989, the royalty agreement was terminated; however, Eddie Brown continued to receive money from Green River, part of which was paid to Pritchett. Thorpe, Clyde Brown, and Green River were charged with mail fraud in executing this scheme. They were also charged with interstate travel and use of mails to further commercial bribery crimes against Big Rivers.

On August 30, 1993, Big Rivers filed the Civil Action against Thorpe, Eddie Brown, Pritchett, Thorpe's daughter, and E & M Coal Company ("E & M"). Big Rivers subsequently moved this Court for leave to amend its complaint in the Civil Action to include Clyde Brown and Buddie R. Morris, II, executor of the estate of Buddie R. Morris, as defendants. Big Rivers asserts that it did not name Debtor as a defendant in the suit due to the automatic stay provided for in section 362 of the Bankruptcy Code. Among other things, the Complaint alleges that Eddie Brown and Pritchett paid bribes to Thorpe in consideration for Thorpe's assistance in causing Big Rivers to award certain coal supply contracts to E & M and Green River and in causing Big Rivers to negotiate, manage, and administer certain coal supply contracts in ways that enabled the coal companies to obtain millions of dollars in excess charges for coal. Eddie Brown and Pritchett, it is alleged, also received money as a result of these schemes, as did Thorpe's daughter. The complaint asserts: (1) federal law claims for violations of the RICO statute and the Robinson–Patman Act, and (2) state law claims for breach of fiduciary duty, unjust enrichment and constructive trust, inducing, aiding and abetting breach of fiduciary duty, commercial bribery, fraud, tortious interference with fiduciary obligations, and breach of the implied covenant of good faith.

The Complaint in Adversary Proceeding No. 94–4019 is an amalgam of the indictment in the Criminal Action and the complaint in the Civil Action. The sections in the complaint entitled "The Scheme to Defraud" and "Facts" closely track Counts 5–6 of the indictment and paragraphs 46–64 of the complaint in the Civil Action. Count I in the adversary proceeding traces Count II of the Civil Action (Robinson–Patman Act violation), the only substantial difference being that Green River is named as the sole defendant in the adversary proceeding. Count II of the complaint in the adversary proceeding asserts, *inter alia*, that Big Rivers was induced to enter into Contract # 527 by commercial bribery, illegality and violation of public policy, procurement of breach of fiduciary duty, and fraud of Green River, and that it was further induced by those acts to administer Contract # 527 favorably to Green River. More specifically, Big Rivers alleged in Count II that: (1) Green River had engaged in commercial bribery, which action entitled Big Rivers to damages (the same

legal issue raised in Count VI of the complaint in the Civil Action) and rendered Contract # 527 and each amendment unenforceable; (2) the acts alleged in the complaint were illegal and in violation of public policy and therefore rendered Contract # 527 and each amendment unenforceable; (3) Green River interfered with the discharge by Thorpe of his fiduciary obligations and induced Thorpe's breach of those obligations (the same legal issues raised in Counts V and VIII in the Civil Action); (4) Green River committed fraud by concealing the entire scheme from Big Rivers; (5) Green River committed fraud by failing to disclose: (a) the payment scheme and (b) the giving of inside information and influence during the negotiations and during the administration of Contract # 527. Such failure to disclose constituted a failure to act in good faith and in accordance with reasonable standards of fair dealing (which allegation expands upon Counts VII and IX of the complaint in the Civil Action); and (6) Green River's conduct as alleged in the adversary complaint constituted a breach of the implied covenant of good faith and fair dealing (which allegation mirrors Count IX of the complaint in the Civil Action, except that E & M was alleged to have breached the obligation in the Civil Action).

In Big Rivers' prayer for relief in the adversary proceeding, it asked for, *inter alia:* (1) under Count I, a judgment in an amount not less than the total of the bribes and kickbacks paid by Green River trebled, plus attorneys' fees and costs; (2) under Count II, a declaratory judgment that Big Rivers has the right to terminate Contract # 527; and (3) under Count II, a judgment for damages.

### DISCUSSION

28 U.S.C. § 1334(a) vests in the district courts original and exclusive jurisdiction over all bankruptcy cases, and § 1334(b) provides that the district courts have original but not exclusive jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(a) empowers the district courts to refer bankruptcy matters to the bankruptcy judges for the district. In the Eastern and Western Districts of Kentucky, LR 21 provides for the automatic referral of most bankruptcy matters, but 28 U.S.C. § 157(d) authorizes the district courts to withdraw a case or proceeding from a bankruptcy judge. That section provides in pertinent part, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion [2] of any party, for cause shown."

The Code does not define what constitutes "cause" to withdraw the reference. Some courts have suggested that the district court consider the goals of promoting judicial economy, promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process, as well as the presence of a jury demand. *See, e.g., Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985); *accord In re Sevko, Inc.,* 143 B.R. 114, 117 (N.D.Ill.1992) (noting that among factors to be considered are judicial economy, convenience, and the particular court's knowledge of the facts). Other courts have stated that only a compelling cause warrants withdrawal from the bankruptcy court. *See, e.g., Citicorp N. Am., Inc. v. Finley (In re Washington Mfg. Co.),* 133 B.R. 113, 116 (M.D.Tenn.1991); *see also Chrysler Credit Corp. v. Fifth Third Bank (In re Onyx Motor Car Corp.),* 116 B.R. 89,

---

**2.** The Court notes that in Debtor's Objection to Big Rivers Electric Corporation's Motion to Withdraw the Reference, Debtor incorporated by reference a portion of a brief filed September 15, 1993, in which the Debtor argued that Big Rivers had waived its right to mandatory withdrawal of the reference because it had not made a timely motion for mandatory withdrawal and because it was engaged in stalling and other obstructionist tactics. However, in Debtor's Brief in Support of Its Objection to Motion of Big Rivers Electric Corporation to Withdraw the Reference, Debtor did not mention the timeliness issue with regard to permissive withdrawal (the type of withdrawal the Court has been asked to consider here). As neither Debtor nor any of the other parties opposing the withdrawal motion chose to raise the timeliness issue with respect to permissive withdrawal, the Court deems the motion timely. In the alternative, the Court finds that even if the motion is untimely, the Court withdraws the reference as to Adversary Proceeding No. 94–4019 on its own motion for cause shown as discussed in the text *infra*.

91 (S.D. Ohio 1990) (recognizing that cause could be based on either one or a combination of the following factors: (1) judicial economy, (2) reducing confusion, or (3) economical use of the debtor's and creditor's resources; court added extra requirement of "truly exceptional and compelling circumstances"); *Allard v. Benjamin (In re DeLorean Motor Co.),* 49 B.R. 900, 912 (Bankr. E.D.Mich.1985) (holding that use of "cause" creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy).[3] This Court finds that, whichever of the above standards is used, cause exists here to withdraw the reference to the bankruptcy court as to Adversary Proceeding No. 94–4019 based on concerns of judicial economy.

■■■ Where a proceeding in bankruptcy involves common issues of law and fact with a case pending in district court, "the overlapping of facts, transactions and issues in the two cases ... is good cause for withdrawal of the reference and consolidation with the district court proceeding." *Wedtech Corp. v. London (In re Wedtech Corp.),* 81 B.R. 237, 239 (S.D.N.Y.1987); *accord Sevko,* 143 B.R. at 117; *Enviro–Scope Corp. v. Westinghouse Elec. Corp. (In re Enviro–Scope Corp.),* 57 B.R. 1005, 1007 (E.D.Pa.1985). Here, the complaint in the adversary proceeding alleges many of the same facts alleged in the Civil Action. In addition, many of the legal issues to be addressed in the adversary proceeding (e.g., commercial bribery with respect to Contract # 527 (federal and state law), inducement of breach of fiduciary duty with respect to Contract # 527, and fraud with respect to Contract # 527) will have to be addressed in the Civil Action as well. Consequently, the Court finds that cause exists to withdraw the reference to the bankruptcy court as to the adversary proceeding based on concerns of judicial economy.[4]

**3.** The Bank Group relies on the *DeLorean* presumption which, according to its terms, "may be overcome only by an overriding interest based on a finding by the Court that the withdrawal of reference is *essential* to preserve a higher interest than that recognized by Congress and is narrowly tailored to serve that interest." 49 B.R. at 912 (citing *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). This Court declines to engraft the analysis used in *Press–Enterprise,* a case that dealt with the presumption that criminal trials are open to the public and press, onto the issue of whether "cause" exists to withdraw the reference to the bankruptcy court.

**4.** Big Rivers correctly points out in its memorandum in support of its motion that a factor many courts consider in deciding whether to withdraw the reference is whether the matter is core or non-core. Big Rivers then invites the Court to "consider the correctness of" the bankruptcy court's ruling that the validity of Contract # 527 and the assumption motion are core matters. Mem.Supp.Mot. to Withdraw Reference at 12–13.

The Court declines Big Rivers' invitation for two reasons. First, "[a] district court is not foreclosed from withdrawing a reference to a bankruptcy court because a matter is found to be a core proceeding...." *Enviro–Scope,* 57 B.R. at 1008; *accord Sevko,* 143 B.R. at 115; *Judge v. Schweigert (In re Leedy Mortgage Co.),* 62 B.R. 303, 306 (E.D.Pa.1986). Second, this Court refuses to second-guess the bankruptcy court, not only because Big Rivers has admitted it intends to appeal the latter court's decision, but also

because the cases cited by Big Rivers in support of its suggestion do not clearly support the right of district courts to review a core/non-core decision of the bankruptcy court absent a formal appeal. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir.1993) (stating that district court considering motion to withdraw reference should first determine whether claim is core or non-core; however, case suggests that district court considered core/non-core issue in the first instance), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994); *Harley Hotels, Inc. v. Rain's Int'l, Ltd.,* 57 B.R. 773, 776 (M.D.Pa. 1985) (rejecting notion that bankruptcy court must decide core/non-core question before the district court can decide motion to withdraw reference).

This Court also rejects the Debtor's and the Bank Group's attempt to reduce the adversary proceeding to nothing more than claims litigation addressing uniquely bankruptcy issues. Big Rivers may have a "claim" as that term is defined in the Bankruptcy Code, but whether it does or not will be determined by state law, not bankruptcy law. As noted in the text, many of the state law issues present in the adversary proceeding will also have to be addressed in the Civil Action; thus, judicial economy will be furthered by consolidating the two cases. Further, to suggest, as the Bank Group does, that the bankruptcy court could estimate the claim for purposes of allowance under section 502(c) is to suggest that Big Rivers has a right that can be enforced against the Debtor; however, the existence of that right has not yet been determined.

Debtor attempts to undercut Big Rivers' argument concerning judicial economy (i.e., that if the withdrawal of the reference is not granted, Big Rivers will have to put on the same massive quantities of proof in two different forums and two courts will have to hear that proof and decide the legal issues) by suggesting that Big Rivers will have to present its case several times anyway. It notes that Big Rivers will have to present its case again in support of its proof of claim in the main case and in its appeal of the Order of the Kentucky Public Service Commission ("PSC") in its Case No. 90–360–C, an examination by the PSC of the application of the Fuel Adjustment Clause of Big Rivers from November 1, 1991 to April 30, 1992,[5] and that Big Rivers might also put on a case in a proceeding commenced by customers of Big Rivers in Henderson Circuit Court. The Court agrees with Big Rivers' reply that, even if it does have to present its case more than once, that fact does not lead to the conclusion that no judicial economy will be achieved by consolidating the adversary proceeding with the Civil Action.

Further, the Court notes that a judge's knowledge of the facts is a factor that may be considered in deciding a motion to withdraw the reference. Here, the Civil Action will not be heard until after the conclusion of the Criminal Action. By then, this Court will be thoroughly versed with respect to the allegations that Contract # 527 was procured by illegal means. Preservation of judicial resources therefore mandates that this Court hear the adversary proceeding along with the Civil Action, as the Court will have clear command over the same core of facts relevant to both proceedings.

As to the Assumption Motion, however, the Court will not withdraw the reference. *See generally Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). The Second Circuit in *Orion* held that "[A]dversary proceeding issues are not to be decided as part of a motion to assume." *Id.* at 1099. In so holding, the court noted, "Although several bankruptcy courts have read § 365 as authorizing them to resolve questions involving the validity of contracts before deciding whether to permit the trustee or debtor-in-possession to assume the contracts, we believe that nothing in § 365 provides such authorization." *Id.* (citations omitted).

Here, Green River has requested that an adversary proceeding issue, the validity and enforceability of Contract # 527, be decided as part of its motion to assume that contract. Under the reasoning of the court in *Orion,* however, the bankruptcy court cannot decide that issue as part of a motion to assume. Therefore, this Court instructs the bankruptcy court not to decide the issue of the validity and enforceability of Contract # 527; indeed, that issue will be decided in this Court.

In accordance with this Opinion, IT IS ORDERED:

(1) Big Rivers' motion to withdraw the reference is GRANTED insofar as this Court hereby withdraws the reference as to Adversary Proceeding No. 94–4019;

(2) pursuant to LR 24(a), LR 6(d) is hereby MODIFIED so that Adversary Proceeding No. 94–4019 be, and hereby is, ASSIGNED to the undersigned;

(3) due to the pendency of the Criminal Action and Adversary Proceeding No. 94–4027, Adversary Proceeding No. 94–4019 is STAYED, including all discovery therein, and all pending motions in Adversary Proceeding No. 94–4019 will be HELD IN ABEYANCE until further order of this Court;

(4) pursuant to Fed.R.Civ.P. 42(a), Adversary Proceeding No. 94–4019 hereby is CONSOLIDATED with the Civil Action No. 93–cv–110–O–C because they involve common questions of law and fact;

(5) Big Rivers' motion to withdraw the reference is DENIED with respect to the Assumption Motion; provided that, however, the Bankruptcy Court shall not decide the issue of the validity and

---

5. This Court notes that, contrary to Debtor's assertions, the PSC Order did not address whether

Contract # 527 was procured through illegal means. *See* PSC Order at 4.

enforceability of Contract # 527 as part of the Assumption Motion; and

(6) the Clerk of this Court shall FILE this Order in the following cases: (1) United States District Court for the Western District of Kentucky, Miscellaneous Action No. 94–M–15–O; (2) United States District Court for the Western District of Kentucky, Civil Action No. 93–cv–110–O–C; (3) United States Bankruptcy Court for the Western District of Kentucky, Case No. 93–40568(3)11; (4) United States Bankruptcy Court for the Western District of Kentucky, Adversary Proceeding No. 94–4019; and (5) United States Bankruptcy Court for the Western District of Kentucky, Adversary Proceeding No. 94–4027.